AYERS et al. v. SNOWBALL et al.*
(No. 7025.)

(Court of Civil Appeals of Texas. Galveston. Dec. 23, 1915. Rehearing Denied Jan. 20, 1916.)

1. DEEDS ☞114—CONSTRUCTION—LAND CONVEYED.

The owner of a 3,000-acre survey of land attempted to convey, by a deed which was ineffective because defectively acknowledged, 320 acres lying north of a previously conveyed 1,000-acre tract located near the center of the survey and running entirely through same from east to west. After 2,600 acres had either been conveyed or been contracted to be conveyed, the owner conveyed 400 acres more or less south of such 1,000-acre tract by a deed reciting that it covered the unsold portion of the survey. Thereafter she conveyed, pursuant to a prior contract with a person who located her husband on the land, 1,000 acres by a deed reciting that the land was "not heretofore sold; it being the intention of this deed and the desire of the parties" to convey the one-third interest owned by the locator for his services, and previously deeded by him to the grantee. The locator's deed clearly covered the 1,000 acres in the southwest corner of the survey. *Held*, that the deed to the 400-acre tract and the deed from the same grantor to the 1000-acre tract did not convey the 320-acre tract covered by the invalid deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329, 388; Dec. Dig. ☞ 114.]

2. TRESPASS TO TRY TITLE ☞41—OUTSTANDING TITLE—SUFFICIENCY OF EVIDENCE.

Evidence in an action of trespass to try title to a tract of land including 320 acres, out of a 3,000-acre survey, covered by an invalid deed, *held* not to show any outstanding title as against plaintiffs to the 320 acres by reason of a location contract entitling the locator to one-third of the entire survey.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ☞ 41.]

3. TRESPASS TO TRY TITLE ☞44 — SUBMISSION OF ISSUES — EVIDENCE — CURATIVE DEED.

Where, in an action of trespass to try title to 320 acres of land attempted to be conveyed by a defectively acknowledged deed, all the evidence went to show that the grantee in such deed claimed and held under it, and that in conveying the land he described it with reference to such deed as the one under which he held, the court properly refused to submit to the jury whether a curative deed was given.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. ☞44.]

4. COSTS ☞32 — TAXATION — UNSUCCESSFUL PARTIES.

Where, in an action of trespass to try title, the judgment was against defendant and for a part only of the plaintiffs, it was error to tax to defendants the costs incurred by the unsuccessful plaintiffs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. ☞32.]

5. APPEAL AND ERROR ☞1171 — HARMLESS ERROR—TAXATION OF COSTS.

The erroneous taxation to the unsuccessful defendant of costs incurred by certain plaintiffs, who were also unsuccessful, did not require a reversal, where the costs so taxed were small in amount.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4546–4554; Dec. Dig. ☞ 1171.]

Appeal from District Court, Harris County; J. W. Woods, Special Judge.

Action by James Snowball and others against J. W. Ayers and others. Judgment for certain plaintiffs, and defendants appeal. Affirmed.

Sam, Bradley & Fogle, Ross & Wood, Stewarts, and Meyer Wagner, all of Houston, for appellants. John A. Kirlicks, John M. Cobb, and John B. Warren, all of Houston, for appellees.

LANE, J. The 3,000 acres of land, situated in Harris county, Tex., of which the 600 acres sued for by plaintiffs, James Snowball and others, is a part, was patented to J. L. Stanley, and became and was the community property of said Stanley and his wife, Mary A. L. Stanley. In 1838 Stanley gave a title bond for 1,000 acres of said land, described by metes and bounds, to J. W. Oates. The Oates tract was so surveyed that its north line extended from the west to the east line of said 3,000-acre tract, a distance of 18,933 varas, leaving the 600 acres, sued for in this cause, north of its north line. On the 1st day of October, 1840, at 10 o'clock a. m., two deeds were recorded in the deed records of Harris county, Tex.—one from J. L. Stanley to A. Wynn, dated October 1, 1840, reciting a consideration of $150, conveying 17 labors of land, which included the 3,000 acres above mentioned, and, for an additional consideration of $100, 100 head of cattle and their increase were conveyed. The other deed was from A. Wynn to Mary A. L. Stanley, wife of J. L. Stanley, conveying the same land and cattle for a recited consideration of $100 for the land and $100 for the cattle. Both deeds were acknowledged before the same person, and witnessed by the same witnesses on the same date. Thereafter Stanley conveyed the 1,000 acres mentioned in the first part hereof to Oates.

After the death of J. L. Stanley in 1843, his widow, Mary A. L. Stanley, married O. B. Monroe. After such marriage she, joined by her husband, sold to E. B. Wise 320 acres out of the 3,000-acre tract lying just north of the Oates 1,000 acres; but the deed by which they sought to pass the title to same, of date January 12, 1855, was never properly acknowledged, and by reason of this defect did not pass title to said Wise. In February, 1855, Mrs. Monroe, joined by her husband, sold two tracts of 100 and 180 acres, respectively, out of the north portion of said 3,000-acre tract. The 320, 100, and 180 acre tracts mentioned composed the 600 acres of land sued for and joins the Oates tract on the north, and embraces all of said 3,000-acre tract which lies north of said Oates tract. On November 2, 1858, Mrs. Monroe and husband, for a recited consideration of $274, conveyed land to William Anders described as follows:

"The remaining balance of a tract of land known as the J. H. S. Stanley tract, of Green Bayou, containing 3,000 acres of land. The tract herein conveyed comprises all of the said Stanley tract *which has not heretofore been sold by the said parties of the first part, being the remaining balance of land not heretofore sold* of the tract of land conveyed by Archibald Wynn to Mary A. L. Stanley, now Monroe, as will appear from Harris County Records of Deeds, Book F, p. 483, be it 400 acres more or less."

On the 2d day of April, 1861, Sterling N. Dobie, by deed, conveyed to J. J. Cain certain land, a part of said 3,000-acre Stanley tract. Said deed in describing the land conveyed contains the following:

"All that certain tract or parcel of land consisting of 1,000 acres, more or less, being one-third of 17 labors granted to J. L. Stanley and patented 22d day of October, 1845, situated and described as follows: In Harris county, on the west side of Green Bayou. * * *"

Then follows further description showing the land conveyed to be one-third of the 3,000-acre Stanley tract.

On the 19th day of July, 1862, Mrs. McNease, formerly Mrs. Mary A. L. Stanley, and husband, W. R. McNease, for a recited consideration conveyed to John J. Cain and George W. Hagy certain land described as follows:

"1,000 acres, more or less, of land out of the John L. Stanley 17 labors on Green Bayou in said Harris county, being the entire balance of said 17 labors *not heretofore sold to Mary A. L.*, the said 17 labors having been conveyed to her by A. Wynn by deed dated 2d Oct., 1840, and recorded on Harris County Records of Deeds, Book F, p. 483, *and the intention of this deed and desire of the parties is to convey to said Cain & Hagy all the right, title and interest that we or either of us have in and to said land, the said 1,000 acres being the same conveyed to said Cain by S. N. Dobie by deed dated April 2, 1862,* and recorded on Harris Co. Records of Deeds, Book Y, p. 142, the same being owned by said Dobie for his one-third interest in said labors for locating the same."

J. L. Stanley died in 1843, and left surviving him his widow, Mary A. L. Stanley (who married O. B. Monroe, and after the death of Monroe married W. R. McNease) and his two children, William and Martha. There was no administration upon the estate of said J. L. Stanley. Mrs. Stanley, later Monroe and McNease, respectively, died in 1885, and by will devised such interest as she had in any of the said 3,000 acres to Mary A. L. Snowball. Mary A. L. Snowball died intestate, and left surviving her three children, to wit, Lillian E., Daisy D., and James B. Snowball. All the plaintiffs, except the Fergusons, who are hereinafter called the Snowballs, are admittedly entitled to the estate of Mary A. L. Stanley-Monroe-McNease, and Martha Stanley, her daughter, to all interest they had in the land involved in this suit at the time of their deaths. The plaintiffs Ferguson claim one-half of any estate J. L. Stanley had in said land, under a deed executed and delivered to him on the 23d day of April, 1879, by William Stanley, the son of J. L. Stanley, deceased.

The Snowballs and Ferguson brought this suit against appellants in the ordinary form of trespass to try title to the 600 acres out of the said 3,000-acre tract (Stanley tract), which lies north of the said Oates 1,000-acre tract, on the theory that the said 3,000-acre tract was the community property of J. L. Stanley and wife, Mary A. L., at the time of the death of said J. L. Stanley, and one-fourth thereof was inherited by William Stanley, and passed by his deed to Ferguson, and that one-fourth thereof passed by inheritance to the daughter, Martha, and from her to the Snowballs, and that one-half thereof passed to the Snowballs by the will of Mrs. Mary A.

L. Stanley-Monroe-McNease; the Snowballs owning three-fourths and the Fergusons one-fourth thereof.

Appellant J. C. League answered, alleging that the title to the said 3,000 acres of land originally patented to J. L. Stanley passed by the two deeds of J. L. Stanley to Wynn, and Wynn to Mrs. Mary A. L. Stanley, respectively, from the community estate of J. L. Stanley and wife to Mary A. L. Stanley as her separate property, and that by the said deed of Mrs. Stanley-Monroe, of date January 12, 1855, she conveyed 320 acres of the 600 acres sued for to E. R. Wise; that by the deed of the same party of date February 6, 1855, she conveyed 180 acres thereof to E. R. Wise; and that by the deed of same party of date February 4, 1856, she conveyed to John Kennedy 100 acres thereof, making a total of 600 acres so conveyed, being the 600 acres sued for by plaintiffs. He also alleged in said answer that he believes that said Mary A. L. Stanley-Monroe executed and delivered to E. R. Wise another deed, by which she again conveyed to him the 320-acre tract and the 180-acre tract above mentioned; that said deed is lost, and the same was executed and delivered prior to February 4, 1856, more than 30 years ago, and that he and those to whom he sold land under E. R. Wise and John Kennedy; that they have held open and notorious and continuous possession under said deeds for many years, paying all taxes due thereon, by the acquiescence of Mary A. L. Stanley-Monroe, as he is informed and believes; and that such facts and circumstances, in connection with the lapse of time and their claim of said property and recitals in said deeds, show the execution of a deed as alleged. He further says that, if it be held that title to said lands in controversy in this suit had not been conveyed by said conveyances, then the same were embraced in and conveyed by the deeds of Mary A. L. Stanley-Monroe-McNease to Anders and Cain & Hagy, hereinbefore mentioned. He further says that if the deed by which Mrs. Monroe and husband undertook to convey the said 320-acre tract to E. R. Wise did not in fact so convey said land, then he says that 1,000 acres of the Stanley 3,000 acres had been sold to Oates, and 1,000 acres thereof had been sold to S. N. Dobie for locating the same, and that the 600 acres sued for had been sold or attempted to be sold, making 2,600 acres sold and attempted to be sold, and that, if said 320-acre tract was not in fact conveyed by said deed of Mrs. Monroe and husband to E. R. Wise, the same was embraced in the description of the deed to William Anders, and was conveyed thereby, and if it was not conveyed by said last-mentioned deed that it was conveyed by the deed of Mrs. McNease and husband to Cain & Hagy; that he is the warrantor of the title under which all the defendants claim, and that said defendants and those whose estate defendants have, or

the persons under whom defendants claim title, have had and held peaceable, continuous, adverse possession of the land sued for by plaintiffs under such conditions and for such length of time as would give them title to the same under the three, five, and ten year statute of limitations.

All the remaining defendants, who are claiming under defendant League, interpose their plea of the three, five, and ten year statute of limitations in bar of plaintiffs' right to recover.

By supplemental petition all the Snowballs pleaded their disabilities in bar of defendants' pleas of limitations.

The trial court in substance found that the two deeds, one from J. L. Stanley to A. Wynn, and the other from A. Wynn to Mary A. L. Stanley, hereinbefore mentioned, in effect conveyed the 17 labors of land, patented to J. L. Stanley, to said Mrs. Stanley as her separate property, and that at the time of his death, in 1843, J. L. Stanley owned no interest in said land, and consequently neither of his children, William or Martha, who survived him, inherited any interest in said land from their father, J. L. Stanley; that the deed of Mrs. Monroe, formerly Mary A. L. Stanley, to E. R. Wise, of date January 12, 1855, by which she attempted to convey the 320 acres lying just north of the Oates 1,000-acre tract, was void, and did not in fact convey said land to Wise, because said deed was never acknowledged by Mrs. Monroe, and that the legal title to said 320 acres remained in the said Mrs. Monroe and passed by her will to her devisees, Lillian Snowball (now Brown), Daisy Snowball, who married McKinney, James Snowball, Jr., and James B. Snowball; and that as the devisees, and heirs of the devisees, of the former Mrs. Stanley, the plaintiffs, except the Fergusons, hold the legal title to the said 320 acres, except such as defendants may recover under their plea of limitation.

The court also found that the plaintiffs Ferguson had no title or interest in the 3,000-acre Stanley tract by virtue of the deed from William Stanley to J. T. Ferguson of date April 23, 1879, and therefore had no interest in the land sued for. He also found that said 320 acres was not conveyed by Mrs. Stanley-Monroe by either the deed to Anders or to Cain & Hagy, and that neither the grantees named in these two last-mentioned deeds, nor any of their vendees, heirs, or legal representatives, have ever claimed to own any portion of the 600 acres of land in controversy in this suit; that the evidence does not show any outstanding record title against the Snowballs to any portion of said 320-acre tract.

The court also found that J. L. Stanley agreed and contracted to convey to S. N. Dobie a one-third undivided interest of the said 17 labors of land, known as the Stanley 3,000-acre tract, for his services in locating

the same; that the deed of Mrs. Stanley-McNease to this one-third interest locates it in the southwest corner of said 3,000-acre tract, and that the deed from Mrs. Monroe and husband to Anders describes and intended to describe only the 400-acre tract, more or less, that had not theretofore been sold by the said grantors, or J. L. Stanley; and that in making said deed they recognized the right of S. N. Dobie to the south 1,000 acres of the J. L. Stanley survey. The court, having found the foregoing from the undisputed facts, refused to submit any of such matters to the jury.

Upon the facts found by the court and jury, and upon the verdict of the jury on the limitation issue, judgment was rendered for the plaintiffs Snowball for all the said 320-acre tract in controversy, except such portion thereof as had been held by the defendants under such conditions and length of time as gave them title under the statute of limitations. Judgment was also rendered against the plaintiffs Ferguson that they take nothing by their suit, and for defendants for all the land sued for except that portion of the 320-acre tract adjudged to the Snowballs. All costs were adjudged against defendants. All the defendants, except John Kooi, have appealed.

In appellants' brief the issues presented on this appeal are stated as follows:

"(1) Do the deeds to William Anders and to Cain & Hagy show an outstanding title as against plaintiffs?

"(2) Is an outstanding title against plaintiffs shown by the evidence of Dobie's locative contract for one-third of the survey?

"(3) Should the court have submitted the issue of presumption of deed?

"(4) Did the court err in not awarding judgment for costs in favor of defendants against plaintiffs Ferguson, who failed to recover anything in the suit?"

We will adopt the issues thus stated and consider them in the order stated.

[1] Prior to the execution of the deeds by Mrs. Stanley-Monroe-McNease, hereinafter called Mrs. Stanley, to William Anders and Cain & Hagy, Stanley had conveyed 1,000 acres of the Stanley 3,000-acre survey to James W. Oates, located near the center of said survey and running entirely through the same from east to west, leaving 600 acres of said survey north of its north line. In January, 1855, thereafter, Mrs. Stanley sold 320 acres lying just north of the Oates tract to E. R. Wise, and attempted to convey the same to said Wise by her deed; but, as said deed was defectively acknowledged, it did not in fact pass the title to said Wise, but such title remained in Mrs. Stanley. In February, 1855, Mrs. Stanley conveyed a tract of 180 acres lying just north of said 320-acre tract to E. R. Wise; and in February, 1856, she conveyed to J. W. McKinney a tract of 100 acres lying just north of said 180-acre tract, which was bounded on the north by the north line of said Stanley 3,000-acre tract. The three tracts last named compose the 600 acres of land sued for in this action, and this is all the land in said Stanley survey lying north of the Oates 1,000-acre tract.

The trial court has found that the evidence shows that S. N. Dobie located the said Stanley survey under Stanley's certificate and for such services Stanley gave Dobie a one-third interest in the land so located. In the bond for title executed by J. L. Stanley to Oates, prior to his death, which occurred in 1843, Stanley recited that the certificate had been "cleared out of the office of S. N. Dobie." From the foregoing statement it will be seen that prior to the date of either of the deeds of Mrs. Stanley to Anders or to Cain & Hagy, hereinafter more fully described, she and her husband had sold 2,600 acres out of the 3,000-acre Stanley survey. On November 5, 1858, Mrs. Stanley, who had then married O. B. Monroe, conveyed to William Anders the remaining balance or the unsold portion of the said Stanley 3,000-acre survey, be it 400 acres more or less. The words in this deed:

"The tract herein conveyed comprises all of the Stanley tract which has not heretofore been sold by the parties of the first part, being the remaining balance of land not heretofore sold of the tract of land conveyed by Archibald Wynn to Mary A. L. Stanley"

—clearly exclude from such conveyance the 320 acres sold by Mrs. Stanley to E. R. Wise, which was not legally conveyed. It is not contiguous to the 400 acres so conveyed, but is situated about a mile therefrom. On the 19th day of July, 1862, Mrs. Stanley by deed conveyed to J. J. Cain and George Hagy 1,000 acres of land, described as being 1,000 acres, more or less, out of the J. L. Stanley 17-labor survey, not heretofore sold, it being the intention of this deed and desire of the parties to convey to said Cain & Hagy all the right, title and interest that the vendors have in and to said land; the said 1,000 acres being the same conveyed to said Cain by S. N. Dobie by deed dated April 2, 1862, recorded in Deed Records of Harris County, Book Y, p. 142, the same being owned by said Dobie for his one-third interest in said 17 labors for locating the same.

It seems to us that the contention that either of the vendees in the two last mentioned deeds acquired title to the 320 acres of land in question by virtue of said deeds is untenable. No one can in good faith contend, and we think no one does contend, that by either of said deeds Mrs. Stanley intended to convey said 320 acres, or that either of the vendees named intended to purchase or acquire title to said land. Neither Anders, nor Cain & Hagy, nor any one claiming under them, have ever contended or claimed that the 320 acres were covered by their deeds. When we look to the language used in the deeds from Mrs. Stanley to Anders and to Cain & Hagy, we think it clearly ex-

cludes the 320 acres in question from the land conveyed by said deeds, and therefore we are not called upon to adopt the narrow construction placed upon such language by appellants.

We answer the first question presented by appellants as an issue in the negative.

[2] Having hereinbefore set out all the facts shown, we also find that no outstanding title to the said 320-acre tract was shown by the evidence of Dobie's location contract for one-third of said Stanley survey.

[3] There was no evidence which would have justified the court in submitting to the jury the issue of presumption of a second deed from Mrs. Stanley-Monroe to E. R. Wise to the 320-acre tract after the execution and delivery of the deed of date January 12, 1855, which was defectively acknowledged. All the facts go to show that Wise was claiming and holding under the deed last mentioned. Some time after the date of said deed Wise conveyed said 320 acres to John Kennedy, and in describing the land reference is made to said defective deed as the one under which he held. The evidence as a whole drives us irresistibly to the conclusion that Wise and those claiming the 320-acre tract in question under him were holding under said defective deed and none other.

[4, 5] We think the court erred in not taxing such portion of the costs as was incurred by the Fergusons to appellants; but as this cost must be so small in amount as would bring it under the rule of "de minimis non curat lex," it does not present cause for reversal of the judgment of the trial court.

We find no such error committed in the trial of this case as should cause a reversal of the judgment therein rendered, and therefore said judgment is affirmed.

Affirmed.